IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **GREGORY HAYNES, R04965** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) |
| JB PRITZER, | ) |
| ROB JEFFREYS, | ) |
| ANTHONY WILLS, | ) |
| ANTHONY JONES, | ) Case No. 23-cv-4069-DWD |
| JOSHUA SCHOENBECK, | ) |
| WALKER, | ) |
| CURTIS P. COX, | ) |
| INTERNAL AFFAIRS UNIT, | ) |
| WEXFORD HEALTH SOURCES, | ) |
| JOHN DOE 1, | ) |
| JOHN DOE 2, | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Gregory Haynes, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Hill Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Menard Correctional Center (Menard). (Doc. 1). Specifically, Plaintiff alleges that he was wrongfully found guilty of a disciplinary ticket that was later expunged, but in the interim he spent more than a month in segregation under deplorable conditions.

Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that

is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed.  28 U.S.C. § 1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

On November 22, 2021, Defendant Curtis P. Cox visited Plaintiff's cell to deliver legal mail, however, during the interaction Cox commented that the envelope containing the mail looked odd and Cox walked away with the mail in his possession.  (Doc. 1 at 5-6).  An hour later a non-party officer escorted Plaintiff to segregation and informed him that he was being placed in segregation for attempting to bring drugs into the prison.  (*Id.* at 6).  Plaintiff was placed in cell N2-429 without, sheets, blankets, towels, or toiletries.  The ceiling was covered in black mold.  Passing officers indicated they would try to secure Plaintiff's personal items, but that there was nothing to be done about the mold because all cells had mold or feces.  (*Id.* at 6-7).  Plaintiff received his bedding and hygiene items two days later, and he received his prescription pain medication on his fourth day in segregation.  (*Id.* at 7).  Plaintiff did not receive his other personal possessions (clothes, legal work, etc.) until December 5, 2021.  (*Id.* at 8).

On November 30, 2021, the Adjustment Committee, comprised of Defendants Schoenbeck, Jones, and Walker, refused to investigate the situation more thoroughly and convicted Plaintiff of the disciplinary offense.  Plaintiff was sentenced to three months in

segregation. (Doc. 1 at 7-8). Plaintiff informed the Adjustment Committee that there was mold in his cell, and asked to be relocated, but they did not oblige. (Doc. 1 at 7).

Two weeks into his segregation stay, Plaintiff began to experience headaches, frequent sneezing, chest tightness and a rash on his right arm. He asked staff passing by his cell for treatment, but he was simply re-directed to the sick call process and was never seen for his issues while in segregation. To date, Plaintiff still suffers from more restricted breathing than what he experienced prior to his segregation stay. (*Id.* at 8).

While in segregation, Plaintiff was also exposed to weekly fires set by fellow inmates. In response to the fires, staff would open the windows, allowing the gallery to fill with cold air (between 30-50 degrees). Plaintiff and fellow inmates complained, but staff retorted that the cold was punishment for setting fires. (Doc. 1 at 9).

Throughout his segregation stay, Plaintiff asked staff for a grievance form, but he was always informed that no grievances were available. (Doc. 1 at 9). Plaintiff was able to secure two grievances from fellow inmates, which he filed on November 30, 2021, and December 6, 2021, to contest his disciplinary proceedings. On December 21 or 22, 2021, Plaintiff was released from segregation with nine other individuals when it was determined by lab test that there were no drugs or other contraband on his mail. (*Id.* at 9-10). Plaintiff again started to ask staff for grievances when he had been released from segregation but was unable to obtain any forms until January 3, 2022. Plaintiff filed a grievance the same day about the living conditions he had experienced in segregation, but he was never able to get a proper response from anyone at the prison or the administrative review board. After trying tirelessly to get a grievance response, Plaintiff

wrote Defendants JB Pritzker, Rob Jeffreys and Anthony Wills on May 7, 2022, about the conditions of his segregation stay, his disciplinary proceedings, and the fact that he had yet to receive his legal mail. (*Id.* at 11-12).

Based on the allegations in the Complaint, Plaintiff designated five claims. (Doc. 1 at 13-31). Each claim contains additional factual and legal allegations, some of which become redundant. In the first claim, Plaintiff alleges that Defendants Pritzker, Jeffreys, and Wills should be held liable for the conditions of his confinement in segregation because the conditions are a by-product of their poor management of the prison and its employees. He alleges he wrote three different letters about the dilapidated environment at Menard, and what he views as systemic breakdowns, but no relief has come to fruition. (Doc. 1 at 13-14). He alleges that these defendants have learned about large-scale problems with the environment at Menard thru many channels, and that they have even sent staff to investigate, but they have turned a blind eye to reports of staff misconduct or to the findings of investigations. Plaintiff goes on at length about a wide variety of topics that he believes the defendants should address, including the age and deteriorating condition of the cellhouse, understaffing, the inadequacy of disciplinary hearings, and more. (Doc. 1 at 13-18).

In his second claim, Plaintiff alleges that his due process rights were violated, and he was subject to cruel and unusual conditions of confinement. (Doc. 1 at 18). He explains that the Adjustment Committee and Internal Affairs incorrectly took Defendant Cox's word that there were drugs on his mail in combination with the results from an unreliable drug field test, to find him guilty of an infraction without substantial evidence.

Specifically, he claims Defendants Schoenbeck, Jones, and Walker should not have convicted him without some proof, but they did it anyway because they have a reputation of being biased, and of violating procedural rules of the disciplinary process. (Doc. 1 at 19-20). Plaintiff further attributes the issues with his disciplinary proceedings to Defendants John Doe 1 and John Doe 2 based on their knowledge of proper procedures for discipline, and their roles to correct staff misconduct. John Does 1 and 2 are assistant wardens. He claims he informed them in two written letters of the issues with his discipline to no avail. He further attributes the procedural problems with discipline to Defendants Jeffreys and Wills as policy makers who should have corrected the staff misdeeds, but the instead turned a blind eye. (*Id.* at 23-24).

Plaintiff further argues the conditions in segregation were atypical and significant because he lacked soap or clean linens or clothing. He was also exposed to black mold, mace, fires, smoke, feces, urine, blood, and loud screaming and banging at all hours. He had a leaking toilet and no cold water. (Doc. 1 at 24). Plaintiff claims he is at risk of another false disciplinary finding because it has happened over 50 times to other inmates. (Doc. 1 at 25).

In Claim 3, Plaintiff complains further of cruel and unusual punishment. Plaintiff again argues that Jones, Walker, and Schoenbeck knew they did not properly investigate or possess sufficient evidence to convict him of the disciplinary offense. Despite this knowledge, and with full awareness of the deplorable conditions in segregation, these defendants still intentionally found him guilty and sent him to segregation. (Doc. 1 at 26-27). Plaintiff adds that in segregation he did not get adequate medical or mental health

attention, which caused him to suffer unnecessarily. He alleges that his experience is the "new norm or new unwritten policy" because despite knowing of the disciplinary problems and the conditions of segregation, the defendants have done nothing to change things. (Doc. 1 at 28).

In Claim 4, Plaintiff alleges that he was denied access to legal mail or correspondence with his attorney in violation of the First Amendment. He specifically claims that he has another lawsuit pending about his religious practices at Menard, and that because he was never given his legal documents from his attorney, his chance of winning his other lawsuit was "weakened." (Doc. 1 at 28-29).

In Claim 5, Plaintiff alleges that after filing grievances and then his first lawsuit about his religious exercise, he was removed from the list for religious services and began to receive verbal threats about his religion. (Doc. 1 at 29-30). About a month after this all began, he was convicted of the false disciplinary offense. He claims that this shows the officers took deliberate steps to conspire to violate his rights by convicting him of a false disciplinary offense, subjecting him to cruel and unusual conditions of confinement, and denying him the right to practice his religion. (Doc. 1 at 31).

Plaintiff seeks to certify his lawsuit as a class action. (Doc. 1 at 31). He also seeks monetary compensation. (*Id.* at 32). In support of his complaint, Plaintiff submitted his relevant grievance documents, as well as a disciplinary summary that shows his charges were expunged. (Doc. 1 at 33-52). The report indicates that the charge was "dismissed on 12/21/2021 after ISP Laboratory Report was received showing 'no scheduled substance found.'" (Doc. 1 at 51).

Based on the allegations in the Complaint, the Court designates the following counts:

**Claim 1:** **Eighth Amendment conditions of confinement claim against Defendants Pritzker, Jeffreys, and Wills;**

**Claim 2:** **Fourteenth Amendment due process claim against Cox, Schoenbeck, Jones, Walker, John Doe 1 or John Doe 2 concerning the disciplinary proceedings;**

**Claim 3:** **Eighth Amendment conditions of confinement claim concerning segregation placement against Defendants Cox, Schoenbeck, Jones, Walker, John Doe 1 or John Doe 2;**

**Claim 4:** **First Amendment access to the Courts claim against Defendant Cox;**

**Claim 5:** **First Amendment retaliation claim against Defendant Cox for the false disciplinary ticket.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Preliminary Dismissals

Plaintiff named the Internal Affairs unit as a defendant, but an entire department within the prison is not a "person" for purposes of § 1983 liability, so any claim against the entire department is dismissed for failure to state a claim. Plaintiff also named

Wexford Health Sources as a defendant, but he did not provide any factual allegations that mentioned Wexford, so his complaint is insufficient against Wexford.

Plaintiff expresses an intent to certify this action as a class action, but he has not filed a proper motion for certification, and even if he did such a motion would be denied. To be certified as a class, Plaintiff must first satisfy the four elements in Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *See Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012). Then, the case must fall under one of the conditions specified in Rule 23(b). *See* FED. R. CIV. P. 23(a), (b); *Lacy v. Cook Cnty.*, 897 F.3d 847, 864 (7th Cir. 2018). Here, Plaintiff cannot satisfy the element of adequacy of representation because as a nonlawyer, he cannot represent the other potential members of the class. *See Howard v. Pollard*, 814 F.3d 476, 478 (7th Cir. 2015) ("[I]t is generally not an abuse of discretion for a district court to deny a motion for class certification on the ground that a pro se litigant is not an adequate class representative.") (emphasis omitted). Therefore, this case will not be certified as a class action.

## DISCUSSION

### Claim 1

To establish a conditions of confinement claim, an inmate must establish (1) a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and (2) where prison officials are deliberately indifferent to this state of affairs. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016), *citing Farmer v. Brennan*, 511 U.S. 825, 824 (1994). Conditions may be considered collectively when analyzing a conditions of confinement claim, and the

duration of the allegedly harmful conditions is relevant to the existence of an Eighth Amendment violation. *Id.* Many of these conditions standing alone are not sufficient to give rise to an Eighth Amendment conditions of confinement claim, but they must also be considered collectively. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006).

Plaintiff alleges that from November 22, 2021, through December 21 or 22, 2021, he was housed in a cell that had black mold on the ceiling, a leaky toilet, no cold water, and frequent cold temperatures. For a few days of his stay, he did not have hygiene supplies or his bedding, and he did not receive his clothing until around December 5, 2021. He was also exposed to chaos caused by other inmates yelling, banging, lighting fire, spreading human waste around the gallery, and causing the frequent discharge of chemical agents. Two weeks into his segregation stay, he began to experience headaches, nasal and sinus irritation, difficulty breathing, and a rash on his right arm. As a result of his time in segregation, Plaintiff alleges he lost 11 pounds, he suffered from depression, he has anxiety about returning to segregation, and he still has trouble breathing.

While the conditions that Plaintiff describes may be lacking under the Eighth Amendment, he cannot make out a claim against Defendants Pritzker, Jeffreys, or Wills concerning these issues because his allegations against them are focused entirely on their role as high-level administrators and do very little to establish personal responsibility for the environment in segregation. "Section 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of the persons they supervise." *Burks v. Raemisch,* 555 F.3d 592, 596 (7th Cir. 2009). The Court further wrote,

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen. Burk's view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care. *See Durmer v. O'Carroll*, 991 F.2d 65 (3d Cir. 1993). That is equally true for an inmate complaint examiner. *See Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006).
>
> []
>
> Burks contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, Monell's rule that public employees are responsible for their own misdeeds but not for anyone else's. Section 1983 establishes a species of tort liability, and one distinctive feature of this nation's tort law is that there is no general duty of rescue. *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189 (1989).

*Id.* at 595-96.

Here, Plaintiff's allegations against Pritzker (the governor of Illinois), Jeffreys (the former director of IDOC), and Wills (Menard's warden) are focused on their supervisory capacity and a free-floating obligation to correct large-scale problems, but this sort of liability fails under the teachings of *Burks*. Although the Court does not disagree that the

conditions at Menard are deplorable, it cannot under controlling precedent, allow Plaintiff to proceed against Defendants Jeffreys, Wills, and Pritzker on the premise that these three received one or two letters from Plaintiff about his stay in segregation months *after* he his disciplinary conviction was expunged, and he was released from segregation. Accordingly, Claim 1 is dismissed as insufficiently pled.

**Claim 2**

In Claim 2, Plaintiff alleges that Defendants Cox, Jones, Schoenbeck, Walker, John Doe 1, and John Doe 2 should be held liable for the lack of due process at his disciplinary proceedings on November 30, 2021. To establish a due process claim related to disciplinary proceedings, an inmate must demonstrate: (1) the deprivation of a liberty interest; and (2) the procedures he was afforded were constitutionally deficient. *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019). Before the Court considers if Plaintiff was afforded adequate procedures at a disciplinary hearing, it will first consider if a liberty interest was even implicated by the punishment imposed. Short terms of segregation do not implicate a protected liberty interest absent truly abhorrent circumstances. *See Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (six-month disciplinary segregation alone); *Lekas v. Briley*, 405 F.3d 602, 605, 613 (7th Cir. 2005) (temporary loss of contact visitation and restricted commissary); *Whitford v. Boglino*, 63 F.3d 527, 533 n.7 (7th Cir. 1995) (six-month disciplinary segregation and demotion to C grade). A plaintiff may also argue that the combination of disciplinary measures deprived him of a protected liberty interest. *See Kervin v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015).

Here, Plaintiff's term of segregation was approximately 30 days. Such a short term is not sufficient to invoke a protected liberty interest absent truly exceptional circumstances, though the Court is not aware of a case where circumstances have been so exceptional that such a short term invoked a liberty interest. *See e.g., Obriecht v. Raemisch*, 565 Fed. App'x 535, 540 (7th Cir. 2014) (finding that 78 days sleeping on a mattress placed directly on a wet floor was deplorable but did not invoke a liberty interest); *Kervin*, 787 F.3d at 836-37 (finding that considerably less than six months in harsh segregation may invoke a liberty interest, but concluding that 30 days without telephone, commissary, or the grievance procedure were not sufficient to invoke a liberty interest). Although the Court does not find that Plaintiff has a liberty interest, this finding does not foreclose a claim about the conditions of confinement.

**Claim 3**

Plaintiff seems to allege that Defendants Schoenbeck, Jones, Walker, John Doe 1 and John Doe 2 were all aware of the conditions in segregation, and thus should be responsible for allowing him to remain in the poor conditions. Some of Plaintiff's unpleasantries were relatively short-lived. For example, it took just two days to get his hygiene supplies and bedding, it took one additional day to receive his medication, and it took about two weeks to receive more of his property. The cold weather also seemed to be a weekly problem, but it is not clear how many times the windows were opened in response to a fire or how long each instance lasted.

By contrast, the environmental exposure to the mold was present for the whole 30 days, and by the second week, Plaintiff was beginning to experience physical symptoms,

which he claims are ongoing. Plaintiff alleges that at his disciplinary hearing on November 30, 2021, he notified Defendants Schoenbeck, Jones and Walker that there was mold in his cell, but they refused to relocate him, and found him guilty of the disciplinary offense knowing he would be subject to inhumane conditions in segregation. At this preliminary juncture, this allegation is sufficient to suggest that Schoenbeck, Jones and Walker exhibited deliberate indifference to the conditions of Plaintiff's confinement, so he may proceed against these three on this claim.

By contrast, Plaintiff may not proceed against any other defendants in relation to his conditions because although he alleges he wrote others about his conditions, it is not clear when he did this or if they received the correspondence. Plaintiff alleges he wrote two letters each to John Does 1 and 2, but the contents and timing of the letters is unclear, so there is not enough information to infer that these two may have been responsible for the conditions in Plaintiff's cell during his 30-day segregation stay.

Plaintiff mentions a litany of other conditions that he found problematic such as delayed access to his property, reduced meal portions, a lack of out-of-cell recreation, and difficulty accessing the grievance procedure. However, he has not associated these conditions with any named defendant. Because § 1983 liability largely relies on personal responsibility, any claim premised on these conditions is insufficient as pled and is dismissed at this juncture.

**Claim 4**

Plaintiff alleges that Defendant Cox never gave him his legal mail, and this prevented him from adequately pursuing claims he had pending in another case.

Prisoners are entitled to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 824 (1977). The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference. *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004). The right of individuals to pursue legal redress for claims that have a reasonable basis in law or fact is protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process. *Id.* (citations omitted). To establish a violation of the right to access the courts, an inmate must show that unjustified acts or conditions hindered the inmate's efforts to pursue a non-frivolous legal claim, *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998), and that actual injury (or harm) resulted. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that *Bounds* did not eliminate the actual injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts). In other words, "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access the courts," and only if the defendants' conduct prejudices a potentially meritorious legal claim has the right been infringed. *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Denial of access to the courts must be intentional; "simple negligence will not support a claim that an official has denied an individual of access to the courts." *Id.* at 291 n.11 (citing *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992)).

Here, Plaintiff alleges that Cox's conduct amounted to confiscation of his mail, which included materials he wished to file in another pending lawsuit concerning his religious exercise. Without the materials, he claims his chance of winning was "weakened." (Doc. 1 at 29). Plaintiff's case concerning his religious exercise is still

pending before the Court, so it seems unlikely at this juncture that the denial of documents in November of 2021, more than two years ago, negatively prejudiced his claims. *See Haynes v. Baldwin*, Case No. 20-cv-86-GCS (S.D. Ill.). He also has not suggested that Cox acted with the intention of actually denying him access to the Courts. As such, Claim 4 against Cox is insufficient as pled.

**Claim 5**

Plaintiff alleges that the disciplinary proceedings that he faced, and the conditions in his segregation cell, were a part of a conspiracy by prison officials to retaliate against him for pursuing his right to observe his religion in a separate lawsuit. A prison official may not retaliate against an inmate because he filed grievances (or a lawsuit) under the First Amendment. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). To show retaliation, an inmate must identify protected speech, a deprivation that occurred to deter the speech, and that the speech or protected activity was at least a motivating factor in the decision to take retaliatory action. Circumstantial evidence of a motivating factor or causal link may include suspicious timing or ambiguous statements, behavior, or comments, but suspicious timing alone is rarely enough to make out a retaliation claim. *Id.* at 680-81.

Here, Plaintiff alleges that after he filed grievances and a lawsuit about his right to observe his religion, then staff began to make disparaging or threating comments about his religion. For example, he was told religious inmates had too many privileges, that he would not ever see the chaplain while he had a pending lawsuit, and that he would never be able to secure a prison job while his lawsuit was pending. He alleges that about a

month later[1], Cox issued him the false disciplinary ticket and Jones and Schoenbeck found him guilty of the ticket without showing him any proof of the underlying offense.

These allegations are insufficient to state a claim for retaliation against any of the named defendants because there is no apparent tie between comments by unnamed guards, and the acts by Cox, Jones, or Schoenbeck.  For example, it's not as if these three (or anyone else) told Plaintiff that his litigation efforts would be punished by disciplinary tickets, or that staff were banding together against him.  Plaintiff also does not give any indication that anyone involved in his disciplinary proceedings said anything to him about his religion, or about grievances or other litigation.  Instead, Plaintiff relies on pure speculation to draw a link between a few unfavorable comments by unnamed staff, and the actions surrounding his disciplinary proceedings.  Plaintiff's speculation is not enough to make out a plausible claim for retaliation, so Claim 5 is dismissed.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 3** of the Complaint (Doc. 1) survives against Defendants Anthony Jones, Joshua Schoenbeck, and Walker.  By contrast, **Claims 1-2 and Claims 4-5** are dismissed for failure to state a claim.  All allegations against Defendants JB Pritzker, Rob Jeffreys, Anthony Wills, Curtis P Cox, Internal Affairs Unit, Wexford Health Sources, John Doe 1, and John Doe 2 have also been dismissed as insufficient and the Clerk of Court is **DIRECTED** to **TERMINATE** these parties.

---

[1] The timing alleged does not make much sense.  Plaintiff filed his lawsuit about his religious exercise on January 22, 2020, but the disciplinary proceedings involved in the present case took place in November of 2021, almost two years later.  *See Haynes v. Baldwin, et al.,* Case No. 20-cv-86-GCS (Doc. 1).

The Clerk of Court is **DIRECTED** to prepare for Defendants Joshua Schoenbeck, Anthony Jones, and Walker: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs,

regardless of whether his application to proceed in forma pauperis was granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Dated: March 4, 2024                                                      /s *David W. Dugan*
                                                                                         _____
                                                                                         DAVID W. DUGAN
                                                                                         United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.