IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREGORY HAYNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-CV-4069-MAB |
| | ) |
| JB PRITZKER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendants Anthony Jones, Joshua Schoenbeck, and Sandy Walker's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 26). For the reasons set forth below, Defendants' motion is DENIED at this time (Doc. 26). However, Defendants may request a *Pavey* hearing if they wish to further contest the specific factual issue of whether the administrative remedy process was available to Plaintiff for Grievance No. 352-1-22.

### BACKGROUND

Plaintiff Gregory Haynes filed this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred at Menard Correctional Center (*see* Docs. 1, 9). Specifically, as it relates to Plaintiff's remaining claim, Plaintiff alleges that his mail was confiscated on November 22, 2021, after the officer distributing his mail took it back and stated that it appeared suspicious (Doc. 9 at p. 2). One hour later, Plaintiff was escorted to segregation and informed that he was being placed in segregation for attempting to bring drugs into the prison (*Id.*). At that time, Plaintiff was

placed in a segregation cell without being provided sheets, towels and toiletries (*Id.*). Moreover, the ceiling of his cell was covered in black mold (*Id.*). For the first two days after his placement in segregation, Plaintiff alerted every officer that passed his cell of the deplorable conditions and his lack of bedding and toiletries (*Id.*).

Plaintiff received his bedding and hygiene items two days after his placement in segregation, and his prescription pain medication four days after his placement (*Id.*). In addition, Plaintiff received his other personal possessions such as clothes and legal work after spending approximately two weeks in segregation (*Id.*). Meanwhile, on November 30, 2021, Plaintiff appeared before the Adjustment Committee, which included Defendants Schoenbeck, Jones, and Walker, for a hearing on his alleged drug violation (*Id.*). The Adjustment Committee refused to thoroughly investigate Plaintiff's situation and instead convicted him of the charged disciplinary offense (*Id.*). Pertinently, at that hearing, Plaintiff also informed the Adjustment Committee of the mold in his cell and requested a cell change (*Id.* at p. 3). However, the Adjustment Committee denied his request (*Id.*).

After two weeks in segregation, Plaintiff began to experience numerous physical symptoms because of his prolonged exposure to mold and other deplorable conditions (*Id.*). Throughout his time in segregation, Plaintiff asked staff to provide him with grievance forms but was repeatedly denied (*Id.*). However, Plaintiff eventually obtained two grievance forms through other inmates, which he submitted on November 30, 2021, and December 6, 2021 (*Id.*). Finally, Plaintiff was released from segregation on or around December 21, 2021, after a lab test found that his mail did not contain a scheduled

substance (*Id.*). Plaintiff sought grievance forms after his release from segregation but was not provided with any until January 3, 2022 (*Id.*). On that date, he submitted a grievance about the deplorable conditions of confinement he experienced in segregation (*Id.*). However, Plaintiff did not receive a response to that grievance (*Id.*).

Plaintiff initiated this action by filing a Complaint on December 29, 2023 (Doc. 1). The Court conducted a preliminary review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A in March 2024 (Doc. 9). Ultimately, Plaintiff was permitted to proceed on the following claim:

> **Claim 3:** Eighth Amendment conditions of confinement claim concerning segregation placement against Defendants [Schoenbeck, Jones, Walker].

(*Id.* at pp. 7, 12-13).[1]

On September 9, 2024, Defendants filed the instant Motion for Summary Judgment on the Issue of Administrative Exhaustion (Doc. 26). Plaintiff did not file a response to Defendants' motion.[2]

---

[1] To the extent Claim 3 named additional Defendants such as Curtis Cox, John Doe 1, and John Doe 2, those Defendants were dismissed because Plaintiff failed to sufficiently plead what he wrote to those individuals, when he did so, and whether they received his letters (*Id.* at p. 13).

[2] Plaintiff's failure to respond to Defendants' Statement of Undisputed Material Facts is deemed an admission of those material facts to the extent they are supported by evidence in the record (*see* Doc. 27 at p. 3). *See also* SDIL-LR 56.1(g) ("All material facts set forth in a Statement of Material Facts . . . shall be deemed admitted for purposes of summary judgment unless specifically disputed."); Fed. R. Civ. P. 56(e)(2); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). However, the admission of Defendants' material facts does not automatically entitle Defendants to summary judgment; they must still demonstrate that they are entitled to judgment as a matter of law. *See Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

## LEGAL STANDARDS

### I. Summary Judgment Standards

Summary judgment is appropriate if the movants show there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the Court "generally will construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). This means courts cannot resolve factual disputes in favor of the party seeking summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). Nevertheless, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

### II. Exhaustion Requirements

As provided in the Prison Litigation Reform Act, "[a] prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) (citing 42 U.S.C. § 1997e(a)). A remedy has not been exhausted if the prisoner failed to abide by the procedures for pursuing relief. *Id.* Thus, to properly exhaust one's administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the

prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

However, an inmate is not required to exhaust administrative remedies that are not actually available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("Remedies that are genuinely unavailable or nonexistent need not be exhausted."). The Seventh Circuit has "found remedies unavailable in a number of instances in which the inmate, through no fault of his own, could not have accessed the grievance procedure." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018). Furthermore, the failure to exhaust administrative remedies is an affirmative defense that the defendants carry the burden of proving. *See Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018). "To meet their burden, the defendants must show beyond dispute that remedies were available." *Id.* at 533-34.

   III.   IDOC Grievance Procedures

Individuals incarcerated within the Illinois Department of Corrections (IDOC) are required to follow the grievance procedure outlined in the Illinois Administrative Code to exhaust their administrative remedies. *See* 20 Ill. Admin. Code § 504.800, *et seq*. (2017). To initiate the normal grievance process, an inmate must file a grievance with their institutional counselor within 60 days of the discovery of the incident. *Id.* at § 504.810(a). After the counselor provides a response, an inmate may submit his grievance to a grievance officer who is to report his or her findings and recommendations to the Chief Administrative Officer (the "warden") within two months. *Id.* at 504.830(e). The warden reviews the grievance officer's findings and recommendations, and then provides a written decision. *Id.* If an inmate is unsatisfied with the warden's decision, he has 30 days

from the date of the warden's decision to appeal to the Administrative Review Board (the "ARB"). *Id.* at § 504.850(a). The ARB then submits a written report to the Director of the IDOC, who makes a final decision within six months, when reasonably feasible. *Id.* at § 504.850(e). Furthermore, "[r]ecords regarding the filing and disposition of grievances shall be maintained in the offender's master file." *Id.* at § 504.860.

Alternatively, an inmate can request for his or her grievance to be handled on an emergency basis by submitting the grievance directly to the warden. *Id.* at § 504.840. If the warden determines the grievance should not be handled as an emergency, the inmate is notified in writing that he or she may resubmit the grievance in accordance with the standard grievance process. *Id.* at § 504.840(c). However, if the warden determines the grievance is an emergency, the warden must expedite processing of the grievance and respond by indicating what action shall be or has been taken. *Id.* at § 504.840(b). Additionally, if an inmate appeals the warden's decision on an emergency grievance, the ARB is also required to expedite processing of the emergency grievance. *Id.* at § 504.850(f).

## DISCUSSION

Defendants contend that they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies as to his current conditions of confinement claim raised against them (*see* Doc. 26). More specifically, Defendants aver that Plaintiff's Administrative Review Board records demonstrate that he only filed one grievance concerning conditions of confinement to the ARB, and that grievance was denied for procedural reasons (*Id.* at p. 8). In addition, Defendants argue that none of Plaintiff's grievances identify them by name or description (*Id.* at p. 9).

The filings attached to Plaintiff's Complaint and the documents accompanying Defendants' motion demonstrate that there are five grievances worth discussing: Grievance No. 114-12-21, Grievance No. 33-12-21, Grievance No. 352-1-22, and two unnumbered grievances (*see* Doc. 1 at pp. 37-50, Doc. 26-1, Doc. 26-2). The Court first addresses the grievances that do not establish that Plaintiff exhausted his administrative remedies before turning to those which demonstrate a genuine dispute as to whether the administrative process was made unavailable to Plaintiff.[3]

I.     *Grievances Nos. 33-12-21 and 114-12-21*

Grievance No. 33-12-21 and Grievance No. 114-12-21 do not exhaust Plaintiff's administrative remedies as to his Eighth Amendment conditions of confinement claim because they do not identify Defendants as their targets for Plaintiff's complaints about his conditions of confinement. In Grievance No. 33-12-21, dated November 30, 2021, Plaintiff challenged the validity of the drug testing kit used to test his incoming mail and the resulting disciplinary ticket (Doc. 26-2 at pp. 7-8). At the facility level, the Grievance Officer recommended Plaintiff's grievance be affirmed because his disciplinary ticket was expunged (*Id.* at p. 5). The Warden concurred in the recommendation and the ARB did not timely receive an appeal from Plaintiff (*Id.*; *see also* Doc. 26-1).[4]

Similarly, in Grievance No. 114-12-21, dated December 6, 2021, Plaintiff challenged

---

[3] The Court first discusses the grievances that do not necessitate a *Pavey* hearing in an attempt to minimize the number of issues and evidence to be discussed if Defendants request a *Pavey* hearing.

[4] Notably, while Defendants' motion does not include the ARB's response to Grievances Nos. 33-12-21 and 114-12-21, Plaintiff's Complaint includes the ARB's response to those grievances dated May 24, 2022 (Doc. 1 at p. 44). In that response, the ARB denied Plaintiff's grievances because they were not appealed to the ARB within 30 days of the Warden's decision (*Id.*).

the Adjustment Committee's finding of guilt and the validity of the underlying drug test, before alleging that he was being retaliated against (Doc. 26-2 at pp. 3-4). The Grievance Officer affirmed the grievance in part and denied it in part, affirming in part because Plaintiff's violation had been expunged and denying in part to the extent that Plaintiff sought information regarding other inmate's test results (*Id.* at p. 1). The Warden concurred in the recommendation and the ARB did not timely receive an appeal from Plaintiff (*Id.*; *see also* Doc. 26-1). *See supra* FN 4.

Accordingly, the Court finds Grievances Nos. 33-12-21 and 114-12-21 fail to exhaust Plaintiff's administrative remedies as to his instant claim because they do not identify Plaintiff's conditions of confinement claim against Defendants (i.e., the Adjustment Committee). *See Roberts v. Neal*, 745 F.3d 232, 235-36 (7th Cir. 2014) ("The grievance has a fatal defect, but it lies elsewhere; it lies in the absence of anything in it to indicate that Davis was the target."); *Cunningham v. Isaacs*, No. 3:21-CV-247-MAB, 2022 WL 3026854, at *3 (S.D. Ill. Aug. 1, 2022) ("In short, the grievance must provide sufficient information to identify the defendant as the target of the complaint or to implicate them in the alleged wrongdoing."); *Bowers v. Dart*, 1 F.4th 513, 518 (7th Cir. 2021) ("Finding a grievance did not sufficiently identify the issue because "[c]ontending that Officer Rottar failed to come to his aid during the attack is not the same as alleging that the jail employees predicted but ignored the risk."). Admittedly, those grievances identified several of the Adjustment Committee's actions that Plaintiff took issue with (*see, e.g.*, Doc. 26-2 at pp. 7-8). And in that regard, the Court finds that Plaintiff's identification of the Adjustment Committee provided sufficient information to identify Defendants, since

they were the specific members of the Adjustment Committee involved in Plaintiff's disciplinary hearing. *See, e.g.*, *Bakaturski v. Brookhart*, No. 21-cv-00014-GCS, 2022 WL 1093633, at *3–4 (S.D. Ill. Apr. 12, 2022) (holding an inmate properly exhausted claims because his grievances against "healthcare" and "head of medical" were sufficient for prison officials to identify the defendant); *German v. Stewart*, 3:22-CV-1352-SMY, 2024 WL 1093727, at *4 (S.D. Ill. Mar. 13, 2024) (Finding grievances were sufficient to identify the defendants because a "review of these records and the grievances conclusively establishes that these defendants were the nurses and doctor who saw Plaintiff in the course of his attempts to secure treatment for his ear ailment."). On top of that, those grievances identify some of Plaintiff's complaints about the conditions of confinement he faced while in segregation (*see, e.g.*, *Id.* at p. 8) (describing the agonizing pain Plaintiff experienced in segregation due to lack of medication and "psychological trauma").

The issue, however, is that neither grievance connects the dots between Defendants (the Adjustment Committee) and Plaintiff's instant conditions of confinement claim. In other words, while those grievances may have grieved both the Adjustment Committee's decision and the conditions of confinement Plaintiff faced, they do not provide any indication that Plaintiff was blaming the Adjustment Committee for being deliberately indifferent to those allegedly deplorable conditions. *See Bentley v. Morris*, 3:23-CV-48-MAB, 2025 WL 894947, at *13 (S.D. Ill. Mar. 24, 2025) ("Without this connection, Grievance No. 103-8-22 fails to identify Plaintiff's fire-related claims against Defendant Mabrey."). To the contrary, those grievances don't even provide any indication that the Adjustment Committee knew of the allegedly deplorable conditions

Plaintiff was facing. And without establishing that connection (or including some other statement directly blaming Defendants or the Adjustment Committee for his cell conditions), neither grievance would have alerted prison officials to Plaintiff's instant conditions of confinement claim against Defendants. *See Jackson*, 105 F.4th 948, 959 (7th Cir. 2024) ("Moreover, the 'specific issue' raised in that grievance was not that there were incapacitating agents in the cell but that Lt. Esser failed to turn Jackson's water on after being notified that it was off. This grievance suggested that the 'nature of the wrong for which redress is sought' was the lack of water, not the presence of incapacitating agents in the cell."). Consequently, Grievances Nos. 33-12-21 and 114-12-21 do not exhaust Plaintiff's administrative remedies as to his current claim against Defendants.[5]

## II. *Plaintiff's Unnumbered Grievances and Missing Grievance No. 352-1-22*

Notably, Plaintiff's and Defendants' filings include three additional grievances that are relevant to the question of whether Plaintiff exhausted his administrative remedies as to his instant claim against Defendants. Complete copies of two of those additional grievances are contained in the record but were not assigned grievance numbers (*see* Doc. 1 at pp. 40-43). Meanwhile, a third grievance, Grievance No. 352-1-22, was assigned a grievance number but no copy of that grievance is contained in the record (*see* Doc. 26-3 at p. 2).

---

[5] In addition, Grievances Nos. 33-12-21 and 114-12-21 both appear procedurally defective because they neither contain Plaintiff's signatures on the section for appealing to the ARB nor appear timely appealed to the ARB (*see* Doc. 1. At pp. 44). While this could provide an independent reason for finding those grievances were not exhausted, the affidavit attached to Plaintiff's Complaint potentially creates a factual dispute as to this point because in it, Plaintiff alleges that he mailed both of those grievances to the ARB in January 2022 (*Id.* at p. 35). Nevertheless, the Court need not consider this potential issue further because of the identification issue discussed above.

Grievance No. 352-1-22 was received by prison officials at Menard on January 28, 2022 (*see* Doc. 26-3 at p. 2; Doc. 26-4 at p. 3). However, Defendants concede that a copy of Grievance No. 352-1-22 was "incidentally" not made at the first level of review and Plaintiff has likewise failed to provide a copy of that grievance (*see* Doc. 26 at p. 12). Therefore, because neither party has a copy of that grievance, the Court is only able to consider supplemental filings that references Grievance No. 352-1-22, including filings attached to Plaintiff's Complaint and facility records attached to Defendants' motion.

For example, Plaintiff's cumulative counseling summary demonstrates that "grievance #352-1-22 regarding safety and sanitation" was "sent to the counselor and answered at 1st level before being logged and numbered in the grievance office." (Doc. 26-4 at p. 3; *see also* Doc. 1 at p. 36). Plaintiff's counseling summary then notes that Grievance No. 352-1-22 was responded to on January 27, 2022, by Correctional Counselor II Timothy Weaver (Doc. 26-4 at p. 3). Moreover, Plaintiff's counseling summary includes an entry from April 22, 2022, wherein "unassigned staff" documented that Plaintiff had submitted a kite (i.e., a note or letter) requesting a copy of Grievance No. 352-1-22 (*Id.*). Additionally, Plaintiff's facility-level grievance log states that Grievance No. 352-1-22 grieved issues of "safety & sanitation" and was returned by the counselor at the first level on February 2, 2022 (Doc. 26-3 at p. 2). That log also includes a comment stating that "[t]his grievance was answered by the counselor before it was received in the grievance office to be logged and numbered." (*Id.*).

Plaintiff's Complaint also included additional records regarding Grievance No. 352-1-22. For instance, Plaintiff sent an affidavit to the ARB, dated May 5, 2022, wherein

he discussed Grievance No. 352-1-22, stating:

> On January 24, 2022, I placed a grievance in the grievance box, here in Menard CC, with the intentions of it being filed and addressed. The grievance was filed under # 352-1-22, and was forwarded to the Counselor a response. I was not satisfied with his response so I forwarded the grievance to the grievance officer. Within a week later I received the grievance but there was no response from the grievance officer, so I re-sent it to the grievance officer. As of today, I have not received any response pertaining to that grievance nor has it been returned to me. Since then I have sent in multiple grievances on how my grievances are being mishandled. I have also written the head counselor, the grievance [office], and the record's office requesting a copy of grievance # 352-1-22 and for a response to it. No one has responded. I even tried filing an emergency grievance. I am at my wits end so now I am requesting assistance from the Administrative Review Board in Springfield, IL. I am also sending handwritten copies of grievances I sought to file.

(Doc. 1 at pp. 34-35).

Plaintiff's two unnumbered grievances also relate to Grievance No. 352-1-22 and provide additional context. For example, in Plaintiff's unnumbered grievance dated January 24, 2022, Plaintiff wrote "[t]his is my 2nd attempt at filing this grievance." (Doc. 26-1 at p. 3). His grievance then identified "living conditions" as the reason for its filing and complained of the deplorable conditions he faced such as mold, cold and smoke, and a lack of sheets, blankets and toiletries (*Id.* at pp. 3-4). That unnumbered grievance was sent to the ARB and marked as received on May 11, 2022 (*Id.*). However, it contained no facility level responses (*Id.*). Consequently, the grievance was denied by the ARB due to the lack of a facility level response and the grievance's apparent untimeliness (*Id.* at p. 2).

Additionally, Plaintiff filed another unnumbered grievance on or around April 24, 2022 (Doc. 1 at pp. 40-41). In that grievance, Plaintiff again challenged the prison's lack of response to Grievance No. 352-1-22 (*Id.*). He then specified dates that he wrote the head

counselor and the record office to request copies of Grievance No. 352-1-22 and a response (*Id.*). In fact, Plaintiff also claimed to have submitted another grievance in the first week of March 2022 that inquired into the status of Grievance No. 352-1-22 (*Id.*). However, he apparently did not receive a response to that grievance either (*Id.*). Finally, Plaintiff concluded his unnumbered grievance by claiming that his rights were being violated and he was being prevented from exhausting his administrative remedies (*Id.*). The unnumbered grievance from April 2022 was also sent directly to the ARB and received on May 11, 2022, before being denied by the ARB for failing to include any facility level responses (*Id.* at pp. 38-41).

Although Plaintiff did not respond to Defendants' motion, the record contains sufficient evidence to demonstrate a genuine dispute as to whether administrative remedies were available to Plaintiff for Grievance No. 352-1-22. To summarize, Plaintiff's and Defendants' records provide no less than two other grievances, an affidavit, several cumulative counseling summary entries, and a grievance log record which all reflect the existence and absence of Grievance No. 352-1-22, which was about Plaintiff's conditions of confinement (*see generally* Doc. 1 at pp. 34-43; Doc. 26-1; Doc. 26-3, Doc. 26-4). Meanwhile, Defendants have provided evidence to support their allegations that Plaintiff did not properly exhaust or appeal Grievance No. 352-1-22 through all stages of the administrative review process (*see* Doc. 26-1 at p. 1; Doc. 26-3 at p. 2).[6]

---

[6] Defendants' motion also argues that Plaintiff's unnumbered January 2022 grievance does not identify his instant claim against Defendants (Doc. 26 at p. 8). While a review of that unnumbered grievance may support Defendants' contention, this is not fatal to the question of whether Grievance No. 352-1-22 identified Defendants and Plaintiff's claim against them because it is readily apparent that Plaintiff's unnumbered January 2022 grievance is not an identical copy of his earlier grievance. In fact, his

Moreover, at this stage, the Court does not find Defendants' repeated citations to records showing that Grievance No. 352-1-22 was not received at the second level of review or by the ARB to be persuasive. Plaintiff's affidavit clearly admits that he received his counselor's response to Grievance No. 352-1-22 (Doc. 1 at p. 34). Likewise, Defendants' undisputed facts and Plaintiff's own filings establish that Plaintiff did not appeal Grievance No. 352-1-22 to the ARB (Doc. 26 at p. 5). But the absence of a dispute on those two points is not fatal to Plaintiff's claim at this time because Plaintiff has alleged that he sent Grievance No. 352-1-22 for second level review and then never heard anything back (*see* Doc. 1 at p. 34), and nothing in Defendants' evidentiary submissions or undisputed facts rules out the possibility that the process was thwarted at that stage by factors outside of Plaintiff's control.

Therefore, at this juncture, sufficient evidence exists to demonstrate a factual dispute on the specific issue of whether administrative remedies were made unavailable to Plaintiff regarding Grievance No. 352-1-22.[7] *See Jackson*, 105 F.4th at 957 ("If, however, a prisoner raises 'sufficient factual allegations demonstrating a genuine dispute as to whether the administrative remedies were available to him,' a court must conduct an

---

unnumbered grievance makes this point clear by immediately stating that it was his second attempt to file a grievance on the subject (Doc. 26-1 at p. 3). As such, without more, the Court can only speculate as to the exact contents of Grievance No. 352-1-22 and whether it specifically identified Plaintiff's conditions of confinement claim against Defendants.

[7] The Court has some questions regarding the timing of Plaintiff's January grievance filings and the evidence underlying those assertions. However, because those questions predominantly involve credibility determinations, the Court believes it prudent to refrain from addressing them until a *Pavey* hearing is held (if Defendants timely request such a hearing). *See Roberts*, 745 F.3d at 234 (explaining that credibility determinations should not be made prior to the district court conducting an evidentiary hearing); *Ingram v. Watson*, 67 F.4th 866, 871 (7th Cir. 2023) ("But the court also cannot disbelieve statements in affidavits without holding a hearing.").

evidentiary hearing pursuant to *Pavey*[.]"); *Woods v. Schmeltz*, 13-CV-1477, 2014 WL 3490569, at *3 (C.D. Ill. July 14, 2014) ("Viewing the evidence in the light most favorable to Plaintiff, a factfinder could conclude that the grievance was filed in accordance with prison procedures, though subsequently lost, and that Plaintiff's attempts to follow up did not result in instructions on how to proceed, rendering administrative remedies unavailable for Plaintiff to exhaust."). To be precise, if Plaintiff properly submitted Grievance No. 352-1-22 to the Grievance Office for second level review, but that grievance was then lost or destroyed through no fault of Plaintiff, this would establish that Plaintiff exhausted the administrative remedies available to him for that grievance. *See Lisle v. Keller*, 803 Fed. Appx. 926, 928 (7th Cir. 2020) ("The second factual dispute is the one Lisle highlighted in his briefing: whether he forwarded the counselor's denial of his original grievance to the grievance officer. Because '[a] swearing contest requires an evidentiary hearing to resolve, and none was held,' *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014), the case must go back to the district court on the issue of exhaustion."); *Lanaghan*, 902 F.3d at 688 ("[T]he proper focus is not whether the defendants engaged in affirmative misconduct, but whether Lanaghan was not able to file the grievance within the time period through no fault of his own."); *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006) ("Because Dole properly followed procedure and prison officials were responsible for the mishandling of his grievance, it cannot be said that Dole failed to exhaust his remedies."). Instances where a properly filed grievance is lost or destroyed once it is no longer in an inmate's possession provide a textbook example of a remedy that is not available. *See Dole*, 438 F.3d at 811.

As such, there is a contested issue of fact as to the dispositive issue of whether administrative remedies were made unavailable to Plaintiff regarding Grievance No. 352-1-22. Due to this factual dispute, Defendants' exhaustion-based motion for summary judgment is DENIED at this time (Doc. 26). An evidentiary hearing is needed if Defendants wish to further pursue the affirmative defense of exhaustion. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008); *see also Hernandez v. Lee*, 128 F.4th 866, 870 (7th Cir. 2025) ("It is instead for the district court to make the required credibility determinations after holding an evidentiary hearing."); *Roberts*, 745 F.3d at 234 ("[A] judge can resolve an issue of exhaustion, like other threshold issues (such as jurisdiction), himself, in order to avoid multiple trials in the same case. But he can do that ***only after*** conducting an evidentiary hearing."); *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) ("At *Pavey* hearings, judges may hear evidence, find facts, and determine credibility.").

Accordingly, if Defendants want to continue pursuing the affirmative defense of failure to exhaust, they must file a notice within **14 days** of this Order requesting a *Pavey* hearing. If a hearing is requested, Defendants shall identify the witnesses they intend to call to testify, as well as the subject matter of each witness.[8] If no request is timely made,

---

[8] If a *Pavey* hearing is requested, Defendants should be prepared to address the following issues. First, Defendants state a "copy of grievance #352-1-22 was *incidentally* not made at the first level of review." (Doc. 26 at p. 12) (emphasis added). In that regard, the Court questions what the typical copying procedure was for inmate grievances after they were received in January 2022 at Menard, and will expect Defendants to provide additional information regarding those procedures so as to explain why no copying occurred here. Defendants should also be able to clarify whether Plaintiff was fairly informed of the "incidental" lack of copying when he requested copies of Grievance No. 352-1-22. Defendants should also be prepared to answer questions as to what records are required to be maintained pursuant to Ill. Admin. Code § 504.860.

 Second, the Court will expect Defendants to explain why Grievance No. 352-1-22 received a grievance number in this instance when it was never reviewed by a grievance officer. Notably, Office Coordinator Sheila Ramsey's entry in Plaintiff's cumulative counseling summary indicates that the "grievance was sent to the counselor and answered at 1st level before being logged and numbered in the

the Court will enter a scheduling order for discovery on the merits of this case.

### Conclusion

For the reasons discussed above, Defendants' Motion for Summary Judgment on the Issue of Administrative Exhaustion is DENIED at this time (Doc. 26). However, to the extent Defendants wish to further contest the dispositive factual issue of whether Plaintiff filed or attempted to file Grievance No. 352-1-22 for second level review, they must file a notice within **14 days** of this Order requesting a *Pavey* hearing. If a hearing is requested, Defendants shall identify the witnesses they intend to call to testify, as well as the subject matter of each witness. If no request is timely made, the Court will enter a scheduling order for discovery on the merits of this case.

**IT IS SO ORDERED.**

**DATED: September 30, 2025**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

---

grievance office." (Doc. 26-4 at p. 3). Yet, at the same time that entry was made, it appears Plaintiff's grievance was assigned a number (*Id.*). Moreover, the Court is uncertain as to why Grievance No. 352-1-22 includes a counseling summary entry from Plaintiff's counselor indicating that he responded to that grievance, while there are no similar entries reflecting responses from Plaintiff's counselor for Grievances Nos. 114-12-21 and 33-12-21 (*see* Doc. 26-4).

Quite simply, the Court wishes to emphasize that irrespective of Plaintiff's failure to respond to Defendants' motion, Defendants bear the burden of proof. If Defendants wish to set this matter for a *Pavey* hearing and attempt to meet that burden, the Court will expect them to provide witnesses or evidence that can address the inconsistencies identified above and speak to the grievance process applicable at Menard on or around January 2022.